# Docket No. 24-2755

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

UNITED SPINAL ASSOCIATION, et al.,

*Plaintiffs and Appellees,*

v.

STATE OF CALIFORNIA, et al.,

*Defendants and Appellees,*

v.

COMPASSION & CHOICES ACTION NETWORK, et al.,

*Proposed Intervenors, Movants and Appellants.*

*Appeal from a Decision of the United States District Court for the Central District of California,*
*No. 2:23-cv-03107-FLA-GJS · Honorable Fernando L. Aenlle-Rocha*

## APPELLANTS' OPENING BRIEF

JOHN KAPPOS, ESQ.
O'MELVENY & MYERS, LLP
2801 North Harwood Street, Suite 1600
Dallas, Texas 75201
(972) 360-1900 Telephone
jkappos@omm.com

JESSICA PEZLEY, ESQ.
KEVIN DIAZ, ESQ.
COMPASSION & CHOICES
520 SW 6th Avenue, Suite 1205
Portland, Oregon 97204
(503) 943-6532 Telephone
jpezley@compassionandchoices.org
kdiaz@compassionandchoices.org

JEFFREY L. FISHER, ESQ.
O'MELVENY & MYERS, LLP
2765 Sand Hill Road
Menlo Park, California 94025
(650) 473-2600 Telephone
jlfisher@omm.com

L. NICOLE ALLAN, ESQ.
O'MELVENY & MYERS, LLP
2 Embarcadero Center, 28th Floor
San Francisco, California 94111
(415) 984-8700 Telephone
nallan@omm.com

*Attorneys for Appellants Compassion & Choices Action Network, Lambert Bassler,*
*Judith Coburn, Peter Sussman, Chandana Banerjee and Catherine Sonquist Forest*

 COUNSEL PRESS INC. · (213) 680-2300

PRINTED ON RECYCLED PAPER

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant Compassion & Choices Action Network ("CCAN") states that CCAN is a 501(c)(4) organization with no parent corporation, and that no publicly held corporation owns 10 percent or more of its stock.

By: /s/ *John Kappos*
John Kappos

*Counsel for Movants-Appellants Burt Bassler, Judith Coburn, Peter Sussman, Dr. Chandana Banerjee, Dr. Catherine Sonquist Forest, and Compassion & Choices Action Network*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

JURISDICTIONAL STATEMENT ........................................................3

ISSUES PRESENTED............................................................................3

STATEMENT OF THE CASE................................................................4

      A.    Intervenors ....................................................................4

      B.    Procedural Background...................................................6

SUMMARY OF ARGUMENT ...............................................................8

STANDARD OF REVIEW .....................................................................9

ARGUMENT .......................................................................................10

  I.    The District Court Improperly Denied Intervenors' Motion to
Intervene.........................................................................10

      A.    Legal Standards............................................................10

            1.    Intervention as of Right ................................. 10

            2.    Permissive Intervention ................................. 11

      B.    Intervenors Were Entitled To Intervene as of Right...............12

            1.    Intervenors Timely Moved to Intervene.......................12

            2.    Intervenors Have Significant, Protectable Interests
in the Litigation That Will Be Practically Impaired
if Intervention Is Denied................................16

            3.    Defendants May Not Adequately Represent
Intervenors' Interests ....................................19

      C.    Alternatively, Intervenors Should Have Been Permitted
to Intervene ................................................................24

  II.    The District Court Abused Its Discretion in Denying
Intervenors' Motion for Reconsideration...........................26

i

**Page(s)**

CONCLUSION ................................................................................28

CERTIFICATE OF COMPLIANCE ...................................................30

STATEMENT OF RELATED CASES ................................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allied Concrete & Supply Co. v. Baker*,
904 F.3d 1053 (9th Cir. 2018) ................................................... 22, 27

*Barke v. Banks*,
2020 WL 2315857 (C.D. Cal. May 7, 2020) .....................................22

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
966 F.2d 470 (9th Cir. 1992) ......................................................... 11, 24

*Cal. ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) ........................................................ 17, 18

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
152 F.3d 1184 (9th Cir. 1998) ...............................................................22

*Canatella v. California*,
404 F.3d 1106 (9th Cir. 2005) ..............................................................27

*Chamness v. Bowen*,
722 F.3d 1110 (9th Cir. 2013) ..............................................................14

*Chandler v. Cal. Dep't of Corr. & Rehab.*,
2023 WL 5353212 (E.D. Cal. Aug. 21, 2023) ...................................22

*Cooper v. Newsom*,
13 F.4th 857 (9th Cir. 2021) .....................................................................9

*County of Orange v. Great Lakes Reinsurance (UK) PLC*,
2013 WL 12136524 (C.D. Cal. Mar. 7, 2013) ...................................25

*Defs. of Wildlife v. Johanns*,
2005 WL 3260986 (N.D. Cal. Dec. 1, 2005) .....................................15

*Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*,
2021 WL 4552143 (N.D. Cal. Aug. 16, 2021) ..................................13

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
2010 WL 2942754 (E.D. Cal. July 23, 2010) ....................................14

iii

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Forest Conservation Council v. U.S. Forest Serv.*,
66 F.3d 1489 (9th Cir. 1995)................................................. 19, 20, 23

*Found. Auto Holdings v. Weber Motors, Fresno, Inc.*,
2021 WL 5822933 (E.D. Cal. Dec. 8, 2021) ................................. 13, 14

*Freedom from Religion Found., Inc. v. Geithner*,
644 F.3d 836 (9th Cir. 2011)................................................... 11, 24

*Idaho Farm Bureau Fed'n v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995)........................................ 11, 13, 14, 17

*Kalbers v. U.S. Dep't of Just.*,
22 F.4th 816 (9th Cir. 2021) ............................................. 9, 13, 14, 18

*Kootenai Tribe of Idaho v. Veneman*,
313 F.3d 1094 (9th Cir. 2002) ...............................................24

*Magnus Pac. Corp. v. Advanced Explosives Demolition, Inc.*,
2013 WL 6095427 (D. Idaho Nov. 20, 2013)....................................25

*McCormack v. Hiedeman*,
2012 WL 2049359 (D. Idaho June 6, 2012) ....................................18

*Missouri v. Harris*,
2014 WL 2506606 (E.D. Cal. June 3, 2014) ....................................25

*NAACP v. New York*,
413 U.S. 345 (1973)................................................... 27, 28

*Nw. Forest Res. Council v. Glickman*,
82 F.3d 825 (9th Cir. 1996)................................................. 12, 14

*Planned Parenthood of Idaho, Inc. v. Wasden*,
376 F.3d 908 (9th Cir. 2004)...............................................18

*Sagebrush Rebellion, Inc. v. Watt*,
713 F.2d 525 (9th Cir. 1983)..................................... passim

*Sawyer v. Bill Me Later, Inc.*,
2011 WL 13217238 (C.D. Cal. Aug. 8, 2011)........................ 12, 13, 15

iv

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*United States v. Mark*,
 795 F.3d 1102 (9th Cir. 2015) ................................................................. 9, 10, 26

*Venegas v. Skaggs*,
 867 F.2d 527 (9th Cir. 1989)................................................................. 11, 15, 25

*Wash. State Bldg. & Constr. Trades Council v. Spellman*,
 684 F.2d 627 (9th Cir. 1982)................................................................. 11, 17, 23

**Statutes**

42 U.S.C. § 12102(1)(A).......................................................................4

**Other Authorities**

Caleb Nelson, *Intervention*,
 106 Va. L. Rev. 271, 273 (2020) ...........................................................21

Stephen C. Yeazell, *Intervention and the Idea of Litigation: A Commentary
 on the Los Angeles School Case*,
 25 UCLA L. Rev. 244 (1977) ...............................................................28

**Rules**

Fed. R. Civ. P. 24(a)(2).......................................................................10

Fed. R. Civ. P. 24(b)(1)(B)...................................................................11

Fed. R. Civ. P. 24(b)(3).......................................................................11

## INTRODUCTION

Movants-Appellants Burt Bassler, Judith Coburn, Peter Sussman, Dr. Chandana Banerjee, Dr. Catherine Sonquist Forest, and Compassion & Choices Action Network ("Intervenors") are disabled patients, doctors who treat terminally ill patients, and an organization that advocates and lobbies for laws that protect and expand end-of-life options. The Compassion & Choices Action Network ("CCAN") sponsored California's End of Life Option Act ("EOLOA"), which gives qualified Californians the ability to obtain aid-in-dying medication. Burt, Judith, and Peter all intend to obtain prescriptions for aid-in-dying medication if they receive a prognosis of six months or less to live. And Drs. Banerjee and Forest consider the option of medical aid in dying a critical tool in their medical practices.

Intervenors timely moved to intervene in the litigation below, which challenges the EOLOA on constitutional and statutory grounds, because the State and County Defendants could not adequately represent Intervenors' narrower and more personal interests in protecting the law. But the district court never even considered these interests. Instead, it sat on Intervenors' motion for six months, eventually (without a hearing) denying it as moot in the same order granting Defendants' motions to dismiss. Intervenors timely moved for reconsideration, explaining that they wanted to participate in any appeal of the dismissal as well as

any proceedings on remand. The district court denied that motion too, inexplicably faulting Intervenors for not addressing mootness issues in their original intervention motion—even though it was filed months before the dismissal order that is asserted to have mooted that motion.

Intervenors timely appeal the district court's denial of their motion to intervene and motion for reconsideration. *See* Dkt. 1, 8. They have also moved separately and in the alternative to intervene directly in United Spinal's appeal of the district court's dismissal order. *See United Spinal Ass'n v. State of California*, No. 24-02751, Dkt. No. 11.1 (9th Cir. May 30, 2024).[1] Intervenors seek to participate in the briefing on this appeal, along with any proceedings on remand, and have continuously sought to do so in a manner that will permit them to raise their separate interests in this litigation without causing unnecessary delays. That explains Intervenors' choice to pursue multiple avenues to intervene—and their willingness to defer to the Court on the best way to ensure their case for intervention is timely heard and properly adjudicated before they lose their opportunity to participate.

This appeal challenges the district court's erroneous order directly. The district court ignored clear and binding precedent permitting intervention in the circumstances present below, then denied reconsideration based on Intervenors'

---

[1] No. 24-02751 is a "related case" pursuant to Circuit Rule 28–2.6.

"failure" to brief an issue in its original papers where that issue had not arisen until months later. This Court should reverse those orders and permit Intervenors to participate in future proceedings as parties to this litigation.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this action pursuant to 28 U.S.C. § 1331. On March 27, 2024, the district court granted the defendants' motion to dismiss, denied Intervenor's motion to intervene as moot, and dismissed the plaintiffs' claims in their entirety. 1-ER-6. On April 26, Intervenors timely noticed this appeal of the district court's order denying their motion to intervene. 3-ER-393. On May 6, 2024, the district court denied Intervenors' motion for reconsideration. 1-ER-2. On May 13, 2024, Intervenors timely amended their notice of appeal to include an appeal of the district court's denial of Intervenor's motion for reconsideration. 3-ER-369.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED

1. Whether the district court erred in denying Intervenors intervention as of right.

2. Whether the district court abused its discretion in denying Intervenors permissive intervention.

3. Whether the district court abused its discretion in denying Intervenors' motion for reconsideration.

## STATEMENT OF THE CASE

### A.    Intervenors

CCAN advocates and lobbies for laws that protect and expand end-of-life options.  CCAN is entitled to intervene in this action as a matter of right because it sponsored the EOLOA, the statute being challenged in this litigation.  *See* 3-ER-260-85.

Dr. Chandana Banerjee and Dr. Catherine Sonquist Forest both treat terminally ill patients.  2-ER-227, 3-ER-246.  Both have prescribed aid-in-dying medication.  2-ER-231-32; 3-ER-246.  Dr. Forest also has personal experience with medical aid in dying because her husband, Will, exercised his right under the EOLOA to obtain aid-in-dying medication when his terminal condition became unbearable.  3-ER-251-52.

Burt Bassler is an 88-year-old emeritus member of the board of the Hospice of the East Bay who was diagnosed with amyloidosis, a rare progressive disease. 2-ER-205-06.  Burt is disabled as that term is defined in the Americans with Disabilities Act ("ADA")[2] because his weakness and shortness of breath are physical impairments that substantially limit his major life activities.  Burt's

---

[2] The ADA defines an individual with a disability as a person who has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

condition is progressive and will likely result in a terminal diagnosis.  2-ER-205-07.

Judith Coburn is a 80-year-old California resident who was diagnosed with, and is currently in remission from, ovarian clear-cell carcinoma—a rare and aggressive form of ovarian cancer.  2-ER-211-13.  Judith also suffers from arthritis, a progressive condition that requires her to use a walker or cane.  2-ER-211-12.  Judith is disabled as that term is defined in the ADA.  If her cancer returns, she would face a grim prognosis and would prefer the option of medical aid in dying.  2-ER-212.  Otherwise she will be forced to endure not only intense physical pain, but also the anxiety inherent in being forced to endure that pain until cancer takes her life.  2-ER-212-13.

Peter Sussman is an 83-year-old retired journalist and author who has lived with spinal complications all his life.  2-ER-218.  In 2001, Peter learned that he faced potential paralysis and had to undergo major reconstructive surgery.  2-ER-218.  That surgery was the first of a series of seven to address his spinal malformation.  2-ER-218-20.  Peter is disabled as that term is defined in the ADA.  Having watched others struggle through terminal diagnoses and conditions, it is vital for Peter to maintain a sense of agency in his own dying.  2-ER-222.

If and when Burt, Judith, and Peter receive a terminal diagnosis, they intend to obtain prescriptions for aid-in-dying medication, and they have capacity to do

so; none of them fear being tricked, coerced, or compelled to pursue medical aid in dying, which is currently a lawful option for a peaceful end-of-life experience. 2-ER-206-07, 212, 214, 223.

### B. Procedural Background

On April 25, 2023, Plaintiffs-Appellants United Spinal Association, Not Dead Yet, Institute for Patients' Rights, Communities Actively Living Independent and Free, Lonnie VanHook, and Ingrid Tischer ("United Spinal") filed a complaint in the Central District of California challenging the EOLOA on federal constitutional and statutory grounds. D.C. Dkt. 1.[3] On July 20, 2023, Defendants-Appellees State of California, et al. (the "State Defendants") moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). 3-ER-329, 333. On July 21, Defendants-Appellees County of Los Angeles and George Gascón, in his official capacity as District Attorney of Los Angeles County (the "County Defendants"), moved to dismiss the complaint under Rule 12(b)(6). 3-ER-311, 317. On July 26, at the State Defendants' request, the district court stayed discovery pending resolution of the motions to dismiss. D.C. Dkt. 26.

On September 21, 2023, Intervenors filed a motion to intervene as of right under Federal Rule of Civil Procedure 24(a) and, in the alternative, for permissive

---

[3] "D.C. Dkt." refers to the district-court docket below. "Dkt." refers to the docket in this appeal.

intervention under Rule 24(b).  2-ER-193-99; 199-200.  Intervenors attached a proposed motion to dismiss.  3-ER-288.

Six months later, on March 27, 2024, the district court granted Defendants-Appellees' motions to dismiss and dismissed United Spinal's claims with prejudice.  1-ER-6.  In a single sentence at the end of the same order, the court denied Intervenors' motion to intervene as moot.  1-ER-21.  On April 9, Intervenors moved for reconsideration of the court's denial of their motion to intervene.  2-ER-38.  Intervenors argued that the motion was not moot because, if United Spinal appealed the dismissal of their claims, Intervenors would "wish to participate in appellate proceedings—as well as any proceedings that might be required beyond that," and granting Intervenors' motion would allow them to do so.  2-ER-42.

On April 24, United Spinal filed a notice of appeal of the district court's order dismissing its claims.  3-ER-397.  On April 26, Intervenors noted in their reconsideration reply brief that United Spinal's appeal was no longer hypothetical because of this filing.  2-ER-25.  That same day, Intervenors filed a notice of appeal of the district court's order denying their intervention motion as moot.  3-ER-393.

On May 6, the district court denied Intervenors' motion to reconsider, stating that Intervenors should have noted their intention to participate in a potential

appeal in their original intervention motion—which was filed six months before the court's order dismissing United Spinal's claims and seven months before United Spinal's appeal of that order. 1-ER-4. On May 13, 2024, Intervenors timely amended their notice of appeal to include an appeal of the district court's denial of Intervenor's motion for reconsideration. 3-ER-369.

On May 16, Intervenors moved to consolidate this appeal with United Spinal's appeal (No. 24-02751) and to expedite briefing on the intervention issue. Dkt. 13.1. This Court denied those motions on June 14. Dkt. 19.1. On May 30, Intervenors moved to intervene in United Spinal's appeal of the district court's dismissal order. *See* No. 24-02751, Dkt. 11.1. On June 10, United Spinal filed an opposition. *Id.*, Dkt. 13.1. Intervenors will reply today; as of the filing of this Opening Brief, Intervenors' motion to intervene in United Spinal's appeal remains pending.

## SUMMARY OF ARGUMENT

The district court erred in denying Intervenors' motion to intervene as of right. Intervenors' motion was timely, and proper. The district court, in denying Intervenors' request as moot, failed to properly analyze Intervenors' significant interest in the litigation—interests that this Court has consistently recognized in other cases in which sponsors of legislation have sought to intervene to protect those statutes from challenges.

For similar reasons, the district court abused its discretion in denying Intervenors' request for *permissive* intervention. Intervenors sought to bring their unique interests to bear on the common legal questions presented in the case, and their intervention would not have caused undue delay or prejudiced the existing parties.

Finally, the district court abused its discretion in denying Intervenors' motion for reconsideration. The district court should have recognized that it had erred in denying the motion to intervene on mootness grounds; instead, the district court doubled down and faulted Intervenors for not presenting its no-mootness arguments *before* the district court's dismissal order—even though "mootness" arguments could not have been raised before the district court's dismissal order.

This Court should reverse the district court's erroneous orders, and permit Intervenors to exercise their well-recognized right to participate in this litigation as parties.

## STANDARD OF REVIEW

This Court reviews the denial of intervention as of right *de novo*, *Kalbers v. U.S. Dep't of Justice*, 22 F.4th 816, 822 (9th Cir. 2021) (quoting *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016)), and the denial of permissive intervention for abuse of discretion, *Cooper v. Newsom*, 13 F.4th 857, 868 (9th Cir. 2021). This Court likewise reviews the denial of a motion for reconsideration for

abuse of discretion. *See United States v. Mark*, 795 F.3d 1102, 1104 (9th Cir. 2015) (citation omitted).

## ARGUMENT

### I. The District Court Improperly Denied Intervenors' Motion to Intervene.

#### A. Legal Standards

##### 1. Intervention as of Right

Rule 24(a) provides:

> On timely motion, the court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). This Court has distilled this inquiry to four factors: (1) whether the motion is timely; (2) whether the applicant has a significant, protectable interest relating to the subject of the litigation; (3) whether that interest will be practically impaired if intervention is not granted; and (4) whether the applicant's interest might be inadequately represented by the parties to the action. *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983). Where different intervenors "share the same common interest insofar as the subject matter of th[e] litigation is concerned" and "sp[eak] with one voice," the Court need not address any "differing interests" and instead considers their arguments together. *Id.* at 526 & n.2.

This Court has consistently held that "[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397-98 (9th Cir. 1995); *see also Sagebrush Rebellion*, 713 F.2d at 527-28; *Wash. State Bldg. & Constr. Trades Council v. Spellman*, 684 F.2d 627, 629-30 (9th Cir. 1982).

## 2. Permissive Intervention

Rule 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Rule 24(b) "vests 'discretion in the … court to determine the fairest and most efficient method of handling a case.'" *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989) (citation omitted). Permissive intervention in a federal-question case such as this, *see* D.C. Dkt. 1, at ¶¶ 15-16, where the intervenor does not seek to bring new claims, requires a showing of timeliness and "a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843-44 (9th Cir. 2011) (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)). The Court must also consider whether permissive intervention would "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

**B.     Intervenors Were Entitled To Intervene as of Right.**

This Court, reviewing *de novo*, should overturn the district court's erroneous denial of Intervenors' motion to intervene as of right, and permit Intervenors to participate in any further proceedings in district court, in this Court (in No. 24-02751), and in any further proceedings arising from United Spinal's separate appeal.

### 1.     Intervenors Timely Moved to Intervene.

This Court considers "three criteria in determining whether a motion to intervene is timely: (1) the stage of the proceedings; (2) whether the parties would be prejudiced; and (3) the reason for any delay in moving to intervene." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996).  Timeliness is "to be determined from all circumstances" and "is to be construed broadly in favor of the party seeking intervention." *Sawyer v. Bill Me Later, Inc.*, 2011 WL 13217238, at *3 (C.D. Cal. Aug. 8, 2011) (citations omitted).  "[T]he timeliness requirement for intervention as of right should be treated more leniently than for permissive intervention because of the likelihood of more serious harm." *Id.* (citation omitted).

Intervenors timely moved to intervene in the district court.  Intervenors filed their intervention motion, along with a proposed motion to dismiss, in the district court on September 21, 2023, less than five months after United Spinal filed suit

and just two months after Defendants-Appellees moved to dismiss, the day before oral argument was scheduled, and the day after the district court took Defendants-Appellees' motions to dismiss under submission. 3-ER-413 (referencing D.C. Dkts. 44 & 45). Defendants had not answered, discovery was stayed and had not commenced, and the district court had not made any substantive rulings. This Court and others have found motions filed at a similar stage—and even later—to be timely. *See, e.g.*, *Babbitt*, 58 F.3d at 1397 (intervention motion timely after answer and just before hearing on preliminary injunction); *Kalbers*, 22 F.4th at 824-27 (intervention motion timely nearly a year after suit, after answer, and after discovery began); *Sawyer*, 2011 WL 13217238, at *3 (intervention motion timely one year after suit and after discovery opened); *Found. Auto Holdings v. Weber Motors, Fresno, Inc.*, 2021 WL 5822933, at *4 (E.D. Cal. Dec. 8, 2021), *R. & R. adopted*, 2022 WL 229857 (E.D. Cal. Jan. 26, 2022) (intervention motion timely where motion to dismiss pending and discovery not yet commenced); *Alturas Indian Rancheria v. Salazar*, 2011 WL 587588, at *3 (E.D. Cal. Feb. 9, 2011) (motion to intervene timely two months after plaintiff filed a motion for summary judgment and one month after defendants filed motions to dismiss); *Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*, 2021 WL 4552143, at *2 (N.D. Cal. Aug. 16, 2021) (motion to intervene timely because hearing on summary judgment was still "three months out").

Key to these holdings was the fact that the intervention motion was filed "before the district court had made any substantive rulings." *Glickman*, 82 F.3d at 837; *see also Babbitt*, 58 F.3d at 1397 (motion filed "before any hearings or rulings on substantive matters"); *Kalbers*, 22 F.4th at 826. This Court has held that in that circumstance, existing parties are not prejudiced by intervention. *Glickman*, 82 F.3d at 837; *see also Found. Auto Holdings*, 2021 WL 5822933, at *4; *Delano Farms Co. v. Cal. Table Grape Comm'n*, 2010 WL 2942754, at *1 (E.D. Cal. July 23, 2010).

In the district court, Intervenors tried to intervene six months before the district court made any substantive ruling. Under any plausible standard, Intervenors' request fit squarely within the timelines courts in this Circuit have consistently blessed. Below, Plaintiffs relied exclusively on a single case—*Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013)—to argue that "[c]ourts have rejected as untimely motions to intervene with similar or even shorter delays." 2-ER-141. In *Chamness*, though, by the time the proposed intervenor moved, plaintiffs had already filed a motion for summary judgment, and the parties had already established a "unanimous view that the case was likely to be resolved at the summary judgment phase." 722 F.3d at 1121-22. No such unanimous view existed here, and no party had filed a summary judgment motion.

14

Moreover, in the district court, no party could plausibly have claimed prejudice based on the timing of the motion to intervene. Defendants-Appellees took no position on Intervenors' motion to intervene in the district court (or on appeal in United Spinal's appeal, *see* No. 24-02751, Dkt. No. 30), so Defendants-Appellees cannot have been prejudiced. *See Venegas*, 867 F.2d at 530 (no prejudice to parties who did not oppose intervention).

United Spinal argued in the district court that intervention would prejudice Plaintiffs by forcing it to "relitigat[e] the same arguments already presented in the State Defendants' motion to dismiss …, needlessly slowing down the litigation, delaying the start of discovery, and making the litigation more complex and costly."[4] 2-ER-142. Relitigating the "same arguments" could not possibly have caused prejudice. And United Spinal's recognition that Intervenors do not wish to "inject new issues and matters" through new counterclaims that would broaden the scope of the case, *Sawyer*, 2011 WL 13217238, at *5, weighs *in favor* of intervention, not against it. In any case, courts have understandably rejected parties' arguments that pursuing cases *they initiated* will take time and resources. *See Defs. of Wildlife v. Johanns*, 2005 WL 3260986, at *9 (N.D. Cal. Dec. 1, 2005) ("not a convincing argument for denying [a] request to intervene").

---

[4] Although United Spinal has expressed concern about delays, United Spinal itself recently sought to delay the briefing in their appeal of the district court's order, *see* No. 24-2751, Dkt. 14.

The district court never considered these factors in denying the motion to intervene as moot after dismissing the complaint; this Court must. Intervenors moved to intervene before the district court issued any substantive order in the case. An even earlier motion to intervene would not have reduced any (already non-existent) prejudice. It is unclear whether the district court viewed the motion as untimely in any respect, although the district court never said as much. But this Court, reviewing *de novo*, can and should determine that the motion to intervene was timely filed, and deserving of adjudication on its merits.

> **2. Intervenors Have Significant, Protectable Interests in the Litigation That Will Be Practically Impaired if Intervention Is Denied.**

In its opposition to Intervenors' motion to intervene in the district court, United Spinal conceded that CCAN, Burt, Judith, and Peter had significant, protectable interests in the litigation that would be practically impaired without intervention. 2-ER-152-53 (United Spinal's opposition to motion to intervene, addressing only the interests of the doctors); 2-ER-107 (Intervenors' reply, discussing United Spinal's concessions). While United Spinal contested Dr. Banerjee's and Dr. Forest's interests in the litigation because they are not "eligible to use EOLOA's procedures," 2-ER-152, it ignored the fact that this Court considers potential intervenors' interests together where they "share the same common interest insofar as the subject matter of th[e] litigation is concerned" and

"sp[eak] with one voice." *Sagebrush Rebellion*, 713 F.2d at 526 & n.2. CCAN, Patient-Intervenors, and Doctor-Intervenors "share the same common interest" in upholding the EOLOA. *Id.* Both in the district court and in this Court, they have "joined in a single application and are represented by the same attorney[s]." *Id.* at 526. Any differences in their interests are thus irrelevant to the intervention analysis.

Although United Spinal's concessions in the district court alone resolve this Court's inquiry on this element, it bears reviewing Intervenors' significant and protectable interests, since doing so exposes the district court's error below. This litigation affects legislation that Intervenors sponsored, which affects deeply personal end-of-life decisions and medical practices. This Court has consistently credited the interests of proposed intervenors who sponsored challenged laws. *See Babbitt*, 58 F.3d at 1397-98; *Sagebrush Rebellion*, 713 F.2d at 527-28; *Spellman*, 684 F.2d at 629-30.

And rightly so. United Spinal cannot now credibly dispute that, as disabled Californians who seek the option of availing themselves of the EOLOA if needed, Burt, Judith, and Peter have a protectable interest that is *at least* as strong as the disabled plaintiffs who filed this action and *do not* intend to obtain a prescription under the Act. *See Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441-43 (9th Cir. 2006) ("intended beneficiaries" of challenged legislation had significant

protectable interest that could be practically affected by disposition of lawsuit challenging that legislation); *Kalbers*, 22 F.4th at 827 (citing "direct, antagonistic relationship between" plaintiff's and intervenor's interests).

As for Dr. Banerjee and Dr. Forest, they have a significant and protectable interest in (1) having the option to prescribe aid-in-dying medication to their eligible patients who seek to avoid unbearable suffering at the end of their lives, and (2) providing this care without fear of prosecution. This Court has recognized that doctors have a significant and protectable interest in defending laws that "protect[] against state criminal prosecution or loss of their medical licenses." *Lockyer*, 450 F.3d at 441.

This Court has likewise recognized (for purposes of Article III standing) that a doctor's "own interests, both financial and professional, in practicing medicine pursuant to his best medical judgment, are … affected by a statutory provision that he alleges violates the federal constitutional rights of" his potential patients. *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 917 (9th Cir. 2004); *see also McCormack v. Hiedeman*, 2012 WL 2049359, at *3 (D. Idaho June 6, 2012) (granting doctor's motion to intervene in suit challenging Idaho's criminal abortion sanctions and recognizing his significant and protectable interests in "the ability of women in Bannock County to obtain abortions without fear of

prosecution by the state" and "his own ability to provide abortions to such women without fear of prosecution").

### 3. Defendants May Not Adequately Represent Intervenors' Interests.

Intervenors were also entitled to intervene because their interests in ensuring access to medical aid in dying are narrower and more personal than the State and County Defendants' general interests in defending the EOLOA. In assessing the adequacy of a party's representation, the Court considers whether that party "will undoubtedly make all of the intervenor's arguments, … is capable of and willing to make such arguments, and whether the intervenor offers a necessary element to the proceedings that would be neglected." *Sagebrush Rebellion*, 713 F.2d at 528. The "burden of making this showing is minimal"; it is satisfied where an intervenor "offers a perspective which differs materially from that of the present parties to this litigation." *Id.*

While "a presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee," the presumption can be overcome where the intervenors' interests are "more narrow [and] parochial" than the general public's, such as "when the applicant asserts a personal interest that does not belong to the general public." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y v. U.S.*

19

*Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (*en banc*) (citation omitted). In *Forest Conservation Council*, for example, the defendant Forest Service's interest in the long-term outcome of a challenge to its forest-management practices was sufficiently distinct from would-be intervenor Arizona's interest in whether forest-management activities in the state would be enjoined during the pendency of the litigation. 66 F.3d at 1499.

Likewise here: Intervenors understand the urgency of access to medical aid in dying in a way that the State and County Defendants do not and will thus represent a different perspective when it comes to potential remedies. *See* 3-ER-251 (Dr. Forest explaining that her husband's terminal illness "worsened so quickly that he barely had time to request medical aid in dying and obtain the prescription before he would have lost the ability to self-ingest"). The government may be willing to accept certain compromises on timelines or other issues that serve the State's long-term interests. Intervenors, however, come to the table with far more urgent concerns that imbue them with different perspectives—views that constitute a "necessary element to the proceedings" that might otherwise "be neglected." *Sagebrush Rebellion*, 713 F.2d at 528.

To the extent United Spinal argues that its unique interests could have been adequately presented to the district court through participation as an *amicus*, that argument sidesteps the unpredictable nature of litigation, the diversity of issues

that parties (and only parties) negotiate in the context of litigation, and the importance of those non-dispositive issues on the nature of the litigation and its ultimate results. *See* Caleb Nelson, *Intervention*, 106 Va. L. Rev. 271, 273 (2020) (highlighting "important differences between the parties to a case and everyone else"). And, critically, only party status affords a seat at the table for settlement negotiations. In any litigation, there is necessarily a risk that non-parties' particular interests will not be adequately aired during settlement discussion, and may therefore be left unaddressed through settlements that permit the *parties* to reach common ground, but which may differently impact others.

As Intervenors well know, the prospect of settlement between the State and challengers to California's EOLOA is not far-flung. *See* Stipulation Regarding Final Judgment Entering Permanent Injunction, Awarding Attorney's Fees, and Dismissing Action, *Christian Med. & Dental Ass'n v. Bonta*, No. 5:22-cv-00335-FLA-GJS (C. D. Cal. May 11, 2023), Dkt. 125 (stipulating to injunction and dismissal before adjudication of motion to CCAN's motion to intervene); *id.*, Dkt. 126 (C.D. Cal. May 17, 2023) (entering final judgment and denying motion to intervene as moot). Intervenors wish to participate in any settlement negotiations in a way that only party status can permit, and wish to participate in other facets of the litigation below based on similar concerns.

This Court has previously recognized that an intervenor's interests are "more narrow and parochial than the interests of the public at large" in the analogous situation where a union seeks to intervene in litigation challenging a prevailing-wage law. *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998); *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1067-68 (9th Cir. 2018) (similar). District courts have applied *Mendonca* to different situations, noting that its "logic … did not hinge on" the union context. *Barke v. Banks*, 2020 WL 2315857, at *4 (C.D. Cal. May 7, 2020). Instead, *Mendonca* applies so long as an intervenor has "narrower interests" in the litigation, despite sharing with state defendants "an identical ultimate goal of upholding state law." *Id.* (noting application beyond union intervention). For example, *Chandler v. California Department of Corrections & Rehabilitation*, 2023 WL 5353212 (E.D. Cal. Aug. 21, 2023), relied on *Mendonca* to hold that transgender inmates seeking to intervene in a challenge to the Transgender Respect, Agency, and Dignity Act had "a materially distinct perspective on the issues" because "they alone 'can attest to the realities of being an incarcerated TGI person.'" *Id.* at *6-7 (citation omitted). This was so despite the fact that the inmates shared with state defendants the "general goal" of "defend[ing] the constitutionality of the Act." *Id.* at *7.

Like the intervenors in *Chandler*, Intervenors here bring "a materially distinct perspective" on the EOLOA since "they alone" can "attest to the realities" of being a disabled person (or her doctor) who wants to avail herself (or her patients) of the medical option to avoid unbearable suffering at her end of life. *Id.* Intervenors explained their deeply personal interests in declarations submitted alongside their motion to intervene and their proposed motion to dismiss. Defendants, in contrast, *did not* attach declarations from patients or doctors to their motion-to-dismiss briefing. D.C. Dkt. 20-1 at 1; *see also* D.C. Dkt. 24. Without Intervenors' perspectives, only the perspectives of the individual Plaintiffs were before the district court on the defendants' motion to dismiss—and those Plaintiffs harbor concerns about the EOLOA with which Intervenors vehemently disagree. In order to ensure that critical interests underlying the EOLOA were adequately represented in the district court proceedings (and any appeals arising therefrom), and given the "liberal construction" afforded Rule 24, *Spellman*, 684 F.2d at 630, the district court should have held that Intervenors have made the "minimal showing" that Defendants did not adequately represent their specific and personal interests in this litigation, *Forest Conservation Council*, 66 F.3d at 1499. This Court should overturn the district court's order, which failed to credit those interests in denying the motion to intervene as moot.

## C.    Alternatively, Intervenors Should Have Been Permitted to Intervene

Even if Intervenors were not entitled to intervene as of right, the district court should have exercised its discretion to permit intervention under Rule 24(b). Intervention would not have caused undue delay, prejudiced existing parties, or injected new legal issues into the case. Its only impact would have been to permit Intervenors' critical and unique perspectives to be placed directly before the Court. The district court abused its discretion by denying Intervenors' motion and foreclosing them from sharpening the legal and humanitarian issues at stake in this litigation.

For the reasons explained above, Intervenors' motion was timely. *See supra* Section I.B.1; *Geithner*, 644 F.3d at 843. And because Intervenors sought to respond to United Spinal's attack of the EOLOA under the ADA, Rehabilitation Act, and the federal constitution, *see* 3-ER-296-308 (Intervenors' Proposed Mot. to Dismiss), their intervention motion also raised "common question[s] of law and fact" with "the main action." *Geithner*, 644 F.3d at 843 (quoting *Beckman Indus.*, 966 F.2d at 473); *see Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173 (intervenors demonstrated common question of law or fact sufficient for permissive intervention in challenge to federal rule where they "asserted defenses" that "squarely respond[ed] to the challenges made by plaintiffs in the main action"

24

as well as "an interest in the use and enjoyment of" the lands subject to the rule).
And again, no parties would have been prejudiced by Intervenors' participation.
*See supra* at 12-15.

Unlike in the Rule 24(a) context, "representational adequacy is not
dispositive in the permissive intervention context." *Magnus Pac. Corp. v.
Advanced Explosives Demolition, Inc.*, 2013 WL 6095427, at *7 (D. Idaho Nov.
20, 2013) (citing *Venegas*, 867 F.2d at 530-31); *see also Missouri v. Harris*, 2014
WL 2506606, at *7 (E.D. Cal. June 3, 2014) (granting permissive intervention
where intervenor "demonstrated it will bring a unique perspective to this action
that will enable the court to make a well informed decision regarding the claims at
issue," despite failing adequacy prong for intervention as of right); *County of
Orange v. Great Lakes Reinsurance (UK) PLC*, 2013 WL 12136524, at *4-5 & n.2
(C.D. Cal. Mar. 7, 2013) (similar). Even if Intervenors failed to make the minimal
showing necessary to establish that Defendants-Appellees did not adequately
represent their interests, there is no doubt that Intervenors would have brought a
"unique perspective to this action that [would] enable the court to make a well
informed decision regarding" the future of the EOLOA. *Harris*, 2014 WL
2506606, at *7. Because Intervenors satisfied the mandatory prongs for permissive
intervention under Rule 24(b), this discretionary factor tipped the balance toward

intervention, too.  The district court's contrary determination constituted an abuse of discretion.

## II.  The District Court Abused Its Discretion in Denying Intervenors' Motion for Reconsideration

The district court's denial of Intervenors' motion for reconsideration was also erroneous.  A district court abuses its discretion on a motion for reconsideration if "it does not apply the correct legal standard or if it rests its decision on a clearly erroneous finding of fact."  *Mark*, 795 F.3d at 1104.  The district court abused its discretion here.

Following the district court's denial of Intervenors' motion to intervene as moot, Intervenors sought reconsideration based on the district court's "failure to consider material facts," 1-ER-3 (citing Civil Local Rule 7-18(c)), namely because the district court "failed to consider [the Proposed Intervenors'] continuing interest to participate in this litigation in the event that [the court's dismissal order] is appealed," 1-ER-3.  The district court inexplicably faulted Intervenors for not addressing the exigencies of a continuing interest on appeal in their initial motion to intervene, which was filed many months *before* the district court dismissed the action, making an appeal ripe.  *See* 1-ER-4 (finding that although Intervenors' no-mootness argument "could have been presented to the court in the Motion to Intervene, it was not").  Intervenors' no-mootness arguments *could not have been* presented before the conditions precipitating them arose.  The district court thus

26

compounded its failure to address the merits of intervention in Intervenors' original motion by dodging the merits again on Intervenors' motion for reconsideration.

To the extent the district court engaged with the merits of intervention as an alternative holding, the district court nonetheless improperly discounted the interests that Intervenors' motion for reconsideration established. The court distinguished Intervenors' precedents on immaterial facts—*see* 1-ER-4 (discussing *Allied Concrete*, 904 F.3d at 1066 and *Canatella v. California*, 404 F.3d 1106, 1109 n. 1 (9th Cir. 2005)—elevating form (comparisons of the timing of the appeals in this case and in Intervenors' precedents) over substance (the core idea that Intervenors' interest in the litigation was not and still *is not* moot, because those critical interests persist on appeal).

The district court made two additional errors that merit consideration, too. First, the district court proceeded as if its hand was forced by the fact that the action was dismissed before the motion to intervene was adjudicated. *See* 1-ER-4-5. That ignores that the motion to intervene was filed six months *before* the dismissal order, such that the district court was free to adjudicate that motion beforehand (and consider Intervenors' proposed motion to dismiss and the declarations submitted in support). Second, the district court sidestepped the fact that the district court, sitting as a finder of fact and with all of the tools of a trial court at its disposal, was in a superior position to adjudicate the motion to

27

intervene even as the case was set to go up on appeal. *See NAACP v. New York*, 413 U.S. 345, 366 (1973) (implicitly recognizing district courts' greater competency for conducting intervention analyses); *see also* Stephen C. Yeazell, *Intervention and the Idea of Litigation: A Commentary on the Los Angeles School Case*, 25 UCLA L. Rev. 244, 256-60 (1977) (evidencing why a district court's understanding of the ongoing litigation permits it to best evaluate which among many competing interests should be elevated to party status in public-law litigation).

The district court failed to properly consider the relevant facts, and misapplied the relevant law—a quintessential abuse of discretion. This Court should correct it.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's orders on Intervenors' motion to intervene and motion for reconsideration, and permit Intervenors to participate in the underlying litigation (and any appeals therefrom) as parties.

Dated:  June 17, 2024

Respectfully submitted,

KEVIN DÍAZ
JESSICA PEZLEY
COMPASSION & CHOICES
520 SW 6th Ave., Ste 1205
Portland, Oregon 97204
Telephone: (503) 943-6532
kdiaz@compassionandchoices.org
jpezley@compassionandchoices.org

/s/ *John Kappos*
JOHN KAPPOS
O'MELVENY & MYERS LLP
2801 N. Harwood St., Ste. 1600
Dallas, Texas 75201
Telephone: (972) 360-1900
Facsimile: (972) 360-1901
E-mail: jkappos@omm.com

L. NICOLE ALLAN
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, California 94111
Telephone: (415) 984-8700
Facsimile: (415) 984)-8701
nallan@omm.com

JEFFREY L. FISHER
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, California 94025
Telephone: (650) 473-2633
Facsimile: (650) 473-2601
jlfisher@omm.com

*Counsel for Movants Burt Bassler, Judith Coburn, Peter Sussman, Dr. Chandana Banerjee, Dr. Catherine Sonquist Forest, and Compassion & Choices Action Network*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)**  24-2755

I am the attorney or self-represented party.

**This brief contains 6,166 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[XX] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Signature:  /s/ *John Kappos*                                     Date: June 17, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s)**  24-2755

The undersigned attorney or self-represented party states the following:

[  ]  I am unaware of any related cases currently pending in this court.

[  ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[X]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are: *United Spinal Ass'n v. State of California*, No. 24-02751 (9th Cir.) is a related case, as it arises from the same district court proceedings.


Signature:  /s/ *John Kappos*                          Date: June 17, 2024